**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**


| | | |
|---|---|---|
| RIVER NORTH EQUITY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16 C 10986 |
| v. | ) | Hon. Marvin E. Aspen |
| | ) | |
| MPHASE TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |


## MEMORANDUM OPINION AND ORDER


MARVIN E. ASPEN, District Judge:

Presently before us is Defendant mPhase Technologies, Inc.'s motion to dismiss, or in the alternative, to change venue.  (Mot. (Dkt. No. 5).)  Defendant removed this action pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446 from the Eighteenth Judicial Circuit, DuPage County, Illinois on November 30, 2016.  Plaintiff has not entered an appearance in this removal action, nor has it responded to Defendant's motion.  For the reasons that follow, Defendant's motion to dismiss is granted and Plaintiff's complaint is dismissed, without prejudice.


## BACKGROUND

Plaintiff River North Equity LLC filed a complaint in DuPage County, Illinois on July 26, 2016.  (Notice of Removal (Dkt. No. 1) ¶ 1.)  Plaintiff asserts claims for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), and Rule 10b–5

promulgated thereunder, 17 C.F.R. § 240.10b-5 (Count I); collection of $400,000 debt allegedly

owed on two delinquent promissory notes (Count II); breach of promissory note

(Counts III and IV); breach of contract (Count V–1[1]); and common law fraud (Count V–2).

(Compl. (Dkt. No. 1–4).)

On or about December 15, 2009, Defendant made two promissory notes (the "Notes") in

favor of non-party JMJ Financial ("JMJ") to secure repayment of certain loans made by JMJ to

Defendant. (Compl. ¶ 5.) The first Note was in the principal amount of $1.5 million, as

consideration for a $300,000 loan. (*Id.*) The second Note was in the principal amount of

$1.2 million, as consideration for a $100,000 loan. (*Id.* ¶ 6.) Both Notes matured on

December 15, 2012. (*Id.* ¶¶ 5–6.) Plaintiff alleges that Defendant "concealed material

information concerning its true financial status from JMJ Financial in an effort to induce JMJ to

purchase the First Note." (*Id.* ¶ 7.) Defendant was in material default of its obligations, which

Plaintiff alleges was only disclosed in later filings Defendant made with the Securities and

Exchange Commission. (*Id.*) Plaintiff alleges Defendant sold both Notes to JMJ with the intent

to never repay the obligations. (*Id.*) Thereafter, on December 22, 2014, JMJ entered into a

Convertible Note Purchase Agreement with Plaintiff pursuant to which Plaintiff agreed to

purchase the Notes. (*Id.* ¶ 8.) At that time, both Notes were in default for Defendant's failure to

satisfy the balance at maturity. (*Id.*) At the time Plaintiff filed its complaint on July 26, 2016, it

alleges Defendant continued to be in material default for "failure to pay sums due and owing

under each Note when they became due." (*Id.* ¶ 9.)

---

[1] Plaintiff's complaint contains two counts labeled "Count V." Consistent with Defendant's
motion, we will refer to the breach of contract claim as Count V–1 and to the common law fraud
claim as Count V–2.

Defendant was not served and did not waive service of process in the state court case, and no proceedings have transpired in the state court case to date.  (Notice of Removal ¶¶ 2–3.)  After removing the case, Defendant moved to dismiss Count I and V–2 for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Defendant also moves to dismiss Counts II through V–2 for lack of personal jurisdiction pursuant to Rule 12(b)(2), because Defendant does not have the requisite minimum contacts necessary for it to reasonably anticipate being haled into court in Illinois.  In the alternative, Defendant moves for an order transferring this matter to the District of New Jersey pursuant to 28 U.S.C. § 1404(a).  Defendant contends "the majority (if not all) of the evidence and proofs necessary for the disposition of the case are in New Jersey," and "both the private and public interests, the convenience of the parties, and the interests of justice favor transferring the matter to New Jersey."  (Mot. at 4.)

Plaintiff was served with notice of the removal on December 1, 2016.  (Dkt. No. 4.)  Defendant provided notice of the motion to dismiss to Plaintiff on December 8, 2016.  (Dkt. No. 6.)  On December 14, 2016, we ordered Plaintiff to respond to the motion by January 5, 2017, and allowed Defendant to file a reply by January 17, 2017.  (Dkt. No. 7.)  On January 17, 2017, with no response having been filed, Defendant filed its reply brief.  (Dkt. No. 8.)

## ANALYSIS

Plaintiff's failure to respond or file anything in this court for nearly three months may be grounds for dismissal for failure to prosecute under Rule 41(b).  Regardless, for the reasons that follow, Defendant's motion to dismiss for failure to state a claim is well-supported.  Taking Plaintiff's allegations as true and construing all facts in its favor, Plaintiff's Count I and V–2 fail

to state a claim upon which relief may be granted, and the remainder of Plaintiff's complaint must be dismissed for lack of personal jurisdiction. Because we find dismissal of Plaintiff's claims is appropriate under Rule 12(b)(2) and Rule 12(b)(6), we decline to address Defendant's alternative argument that this matter should be transferred to the District of New Jersey.

## I. MOTION TO DISMISS FRAUD CLAIMS

Defendant first argues Counts I and V–2, which assert fraud claims, do not plead fraudulent conduct with the requisite specificity under Federal Rule of Civil Procedure 9(b). In addition, Defendant contends that Count I, which alleges a violation of Section 10(b) of the Securities Exchange Act, fails for the additional reason that it does not meet the even higher pleading standards under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(b).

"The purpose of the motion to dismiss is to test the sufficiency of the complaint, not decide the merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (internal quotation marks omitted) (quoting *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). Dismissal pursuant to Rule 12(b)(6) is proper only if a complaint lacks enough facts "to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (internal quotations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *accord. Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65). That is, while the plaintiff need not plead "detailed factual allegations," the complaint must allege facts sufficient "to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. We accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *White v. Keely*, 814 F.3d 883, 887–88 (7th Cir. 2016); *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012) ("In reviewing the sufficiency of a complaint, we must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff.").

A heightened pleading standard applies when a complaint alleges fraud, requiring a party to "state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). A complaint setting forth fraud claims "must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)); *accord. Camasta*, 761 F.3d at 737 (a plaintiff must state "the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff" (internal quotations omitted)). While a plaintiff need not provide "precise details" and we do not "take an overly rigid view" of the allegations, a plaintiff must nevertheless "use some . . . means of injecting precision and some measure of substantiation into their allegations of fraud." *Presser*, 836 F.3d at 776 (alteration in original) (citation omitted).

In addition to the burden imposed by Rule 9(b), where a Plaintiff alleges securities fraud under Section 10(b), such claims are subject to the pleading standards set forth in the PSLRA. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313–14, 127 S. Ct. 2499, 2504

(2007). To prevail on Count I, Plaintiff must prove: "(1) a material misrepresentation or omission by the defendant in connection with the purchase or sale of securities; (2) scienter; (3) reliance; (4) economic loss; and (5) loss causation." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 617 (7th Cir. 2011). Under the PSLRA, where a plaintiff alleges that the defendant "(A) made an untrue statement of a material fact; or (B) omitted to state a material fact," the plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Further, the plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." 15 U.S.C. § 78u–4(b)(2). Pursuant to the PSLRA, "the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) [of § 78u–4(b)] are not met." 15 U.S.C. § 78u–4(b)(3)(A).

Here, Plaintiff's Count I and Count V–2 fail to state with particularity the circumstances constituting fraud under Rule 9(b). Count I additionally falls short of meeting the higher PSLRA pleading standards. Both claims are based on the same broad, non-specific assertions regarding omissions and misrepresentations Defendant allegedly made to Plaintiff and to JMJ:

- Defendant "concealed material information concerning its true financial status from JMJ Financial in an effort to induce JMJ to purchase the First Note," (Compl. ¶ 7);

- Defendant concealed from JMJ that it was "in material default" of "a number of its obligations which it would later disclose in filings made with the S.E.C.," (*id.*);

- Defendant sold both Notes to JMJ "with the intent to never repay either obligation," (*id.*);

- With respect to Plaintiff, Defendant "employed fraudulent misrepresentations, artifices of fraud, and material omissions as a means to solicit the sale of the Notes to [Plaintiff]," including (1) "[d]evelop[ing], deriv[ing] and concoct[ing] the sale of the Notes to [Plaintiff] with knowledge and intent that it would never repay the

Notes despite assertions as to the same"; and (2) "[w]illfully conceal[ing] and misrepresent[ing] its financial condition and the fact that it was generally unable to pay its debts as they came due," (*id.* ¶¶ 12, 46);

- Defendant knew its statements and representations were "materially false, misleading, or otherwise failed to contain adverse material information" at the time they were made in an effort to persuade Plaintiff to transact, (*id.* ¶¶ 13, 16, 47, 48).

Plaintiff has painted the alleged misrepresentations and fraudulent omissions in broad strokes and recited in conclusory fashion the elements of a fraud claim. For example, Plaintiff does not state what "material information" concerning its financial status was concealed from JMJ, or why such concealment was false or misleading. Plaintiff fails to indicate what "statements" or "fraudulent misrepresentations" were made, what was said, how they were communicated, or when they took place. Plaintiff alleges no connection between itself and Defendant. Further, despite alleging Defendant "was in material default of a number of its obligations," Plaintiff does not specify what obligations it refers to or why "later disclos[ure]" to the SEC constitutes fraud or concealment.

Nor has Plaintiff plausibly alleged reliance, a necessary element of both its common law and securities law fraud claims. *AnchorBank*, 649 F.3d at 617; *Doe v. Dilling*, 228 Ill. 2d 324, 342–43, 888 N.E.2d 24, 35–36 (Ill. 2008). Plaintiff asserts that it relied on Defendant's "fraudulent misrepresentations, artifices of fraud, and material omissions" to JMJ, but as Defendant points out, the assignment entered into between Plaintiff and JMJ plainly contradicts these allegations. (Mot. at 8.) The assignment agreement states:

> [Plaintiff] is aware that the Notes are non-performing and in default. [Plaintiff] is aware that [Defendant is a] troubled, under-capitalized, development stage compan[y] with little or no revenue and ongoing losses that are likely to continue. [Plaintiff] is aware that this is a risky investment and that [Plaintiff] may lose part or all of its investment.

(Compl., Ex. C at PageID #: 35.) The assignment agreement further states that "due to adverse market conditions, a large number of the convertible notes have become non-performing, and . . .

[JMJ] does not have the capacity to manage distressed investments or to pursue collection efforts against non-performing assets." (*Id.*) Contrary to Plaintiff's allegations, at the time it purchased the Notes, it acknowledged that it was aware that the Notes were in default, it knew Defendant was a "troubled, under-capitalized, development stage compan[y] with little or no revenue and ongoing losses that are likely to continue," and that it was making "a risky investment." (*Id.*) In light of this language in the assignment agreement, we fail to see how Plaintiff can prove its allegations that Defendant "concealed material information concerning its true financial status from JMJ Financial" or Plaintiff; what "fraudulent misrepresentations, artifices of fraud, and material omissions" Defendant used; or how Defendant concealed its "financial condition and the fact that it was generally unable to pay its debts as they came due." (Compl. ¶¶ 7, 12, 46.)

Furthermore, Count I fails to "state with particularity the facts—known to the speaker at the time—that render the statement false or misleading" as required under the PSLRA. *Constr. Workers Pension Fund-Lake Cnty. and Vicinity v. Navistar Int'l Corp.*, 114 F. Supp. 3d 633, 651 (N.D. Ill. 2015). "When alleging that Defendants omitted something, plaintiffs must point to a specific statement that is made misleading by [an] omission, and offer specific, contradictory information known to [Defendants] sufficient to establish that [Defendants] made any misleading statements." *Id.* (internal quotations omitted)). For the above-stated reasons, Plaintiff's complaint lacks the necessary details regarding the alleged misrepresentations or omissions.

In addition to Plaintiff's failure to allege specific facts or information showing why the statements made or omitted were false or misleading, Count I must be dismissed because Plaintiff has insufficiently pled scienter as required by the PSLRA. To establish scienter requires showing "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*,

551 U.S. at 319, 127 S. Ct. at 2507 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193,

96 S. Ct. 1375, 1381 (1976)). "Conclusory allegations that defendants acted with knowledge that

the representations were false and misleading do not satisfy the PSLRA's pleading

requirements." *Premier Capital Mgmt., L.L.C. v. Cohen*, No. 02 C 5368, 2003 WL 21960357,

at *5 (N.D. Ill. Aug. 15, 2003). "To find scienter, the inference must be more than merely

'reasonable or permissible,' it must be 'cogent and at least as compelling as any opposing

inference one could draw from the facts alleged.'" *Greer v. Advanced Equities, Inc.*,

683 F. Supp. 2d 761, 773 (N.D. Ill. 2010) (quoting *Tellabs*, 551 U.S. at 324, 127 S. Ct. at 2510).

Here, Plaintiff has not alleged any non-conclusory facts giving rise to a strong inference that

Defendant made any statement or omission knowingly with intent to deceive, manipulate, or

defraud.

Accordingly, after considering Defendant's motion and independently reviewing the

allegations in the complaint, we agree Plaintiff has failed to state a plausible fraud claim, and

Counts I and V–2 must be dismissed, without prejudice. As the dismissal is without prejudice at

this point, we decline Defendant's request that we make findings regarding compliance with the

PSLRA pursuant to 15 U.S.C. § 78u–4(c)(1).


## II.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant additionally argues Count V–2, along with Counts II through V–1, must be

dismissed for lack of personal jurisdiction. (Mot. at 9.) Specifically, Defendant argues it has

insufficient contacts with Illinois such that we may not exercise specific jurisdiction over it. (*Id.*)

Plaintiff alleges we have specific personal jurisdiction over Defendant pursuant to Illinois' long

arm statute, 735 ILCS 5/2–209, "as the facts and circumstances which form the basis of the

causes of action alleged herein arise from a contract substantially related to the State of Illinois and a breach of fiduciary duty within the State of Illinois." (Compl. ¶ 3.)

Plaintiff bears the burden of establishing that personal jurisdiction exists. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In determining whether personal jurisdiction exists, we accept all well-pleaded allegations in the complaint as true. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found.*, 338 F.3d at 783. We resolve factual disputes in the plaintiff's favor, but unrefuted assertions by the defendant will be accepted as true. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

A federal court has personal jurisdiction over a plaintiff's state law claims if an Illinois court would have jurisdiction. *Purdue Research*, 338 F.3d at 779; Fed. R. Civ. P. 4(k)(1)(A) (in order to establish personal jurisdiction, the defendant must be "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). The Illinois long-arm statute governs the exercise of personal jurisdiction by an Illinois court over a nonresident. *Russell v. SNFA*, 2013 IL 113909, ¶ 29, 987 N.E.2d 778, 784 (Ill. 2013). "A state's exercise of personal jurisdiction is also subject to the demands of the Fourteenth Amendment's due process clause. Because Illinois permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state statutory and federal constitutional requirements merge." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010); *accord. N. Grain Mktg.*, 743 F.3d at 492 ("Thus, the statutory question merges

with the constitutional one—if Illinois constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so."). "A forum state's courts may not exercise personal jurisdiction over a nonconsenting, out-of-state defendant unless the defendant has 'certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *N. Grain Mktg.*, 743 F.3d at 492 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)).

Defendant must have purposely established minimum contacts with the forum state "such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183 (1985). To support the exercise of specific personal jurisdiction "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, ⸺ U.S. ⸺, 134 S. Ct. 1115, 1121 (2014); *see also Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (explaining the defendant's contacts with the forum state must "directly relate to the challenged conduct or transaction" and we must evaluate specific personal jurisdiction "by reference to the particular conduct underlying the claims made in the lawsuit"); *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 820 (N.D. Ill. 2008) ("The defendant, rather than the plaintiff or a third party, must create the contacts."). "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp.*, 471 U.S. at 472, 105 S. Ct. at 2182).

In support of its motion to dismiss Counts II through V–2, Defendant submitted the affidavit of Martin S. Smiley, Executive Vice President, Chief Financial Officer, and General Counsel for Defendant. (Smiley Aff. (Dkt. No. 5–1) ¶ 1.) Smiley attests Defendant is a New Jersey corporation with principal places of business in New Jersey and Connecticut. (*Id.* ¶ 2.) Defendant "does not, and has not, conducted business within Illinois, and neither Defendant nor any of its agents were involved in the sale of the promissory notes from JMJ to Plaintiff. (*Id.* ¶¶ 3–4.) All of Plaintiff's common law claims in Counts II through VI relate to Defendant's alleged nonpayment of debts in connection with the promissory notes. However, while Plaintiff is an Illinois company, prior to receiving notice of this litigation, "neither Defendant nor any of its agents had any involvement, communication, or interaction with any agent of Plaintiff," and Defendant "has not tendered any payments to Plaintiff" in connection with the Notes, or otherwise. (*Id.* ¶¶ 5–6.) Rather, Defendant argues it was not a party to the transaction between Plaintiff and JMJ, and it has not transacted with Plaintiff "or any citizen or resident of Illinois" in connection with the Notes. (Mot. at 11.) Nor do the Notes themselves "contemplate any action related to Illinois." (*Id.*)

Plaintiff's conclusory allegation that the "facts and circumstances which form the basis of the causes of action alleged [in the complaint] arise from a contract substantially related to the State of Illinois and a breach of fiduciary duty within the State of Illinois" is refuted by Defendant's affidavit, which presents uncontested evidence to the contrary. Plaintiff's complaint contains no other allegations establishing Defendant had any contacts with Illinois whatsoever. Accordingly, based on Defendant's affidavit challenging personal jurisdiction and its unrefuted assertions, there is insufficient evidence supporting the exercise of personal jurisdiction, and

Counts II through V–2 must be dismissed, without prejudice. *Purdue Research Found.*,

338 F.3d at 782–83; *GCIU-Emp'r Ret. Fund*, 565 F.3d at 1020 n.1.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint is dismissed in its entirety, without

prejudice. To the extent Plaintiff can amend the complaint consistent with this Order, it may do

so on or before March 24, 2017 or the dismissal will be with prejudice. It is so ordered.


_____
Honorable Marvin E. Aspen
United States District Judge

Dated: March 1, 2017
        Chicago, Illinois